## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**KENNETH R. RICHARDS, JR.**              **CIVIL ACTION NO. 19-0988**

                                          **SECTION P**
**VS.**
                                          **JUDGE TERRY A. DOUGHTY**

**JIM TUTE, ET AL.**                      **MAG. JUDGE KAREN L. HAYES**

### REPORT AND RECOMMENDATION

Plaintiff Kenneth R. Richards, Jr., a prisoner at Lincoln Parish Detention Center ("LPDC") proceeding pro se and in forma pauperis, filed the instant proceeding on July 29, 2019, under 42 U.S.C. § 1983.  He names the following defendants: Warden Jim Tuten, Assistant Warden Pam Torbor, Randy Roberson, Courtney Hall, Skip Russell, Sheriff Mike Stone, Major Chad Alexander, Captain Randy Williams, Dr. Pamela R. Hearn, Nurse Danielle Wever, Deputy Devin Skipper, Betty Harper, and Nurse Jennifer Plunkett.[1]  For reasons below, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff alleges that, since he arrived at LPDC on July 2, 2019, he has been exposed to black mold, which grows on the showers and ventilation equipment.[2]  [doc. # 1, p. 1].  The mold causes him headaches and makes him cough up phlegm, white foam, and blood.  *Id.*  He complained about the mold several times, but "nothing [has] been done . . . ."  [doc. # 1, p. 1].  He faults Warden Jim Tuten for knowing of the condition yet failing to remedy it.  *Id.* at 3.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[2] To reiterate, Plaintiff filed this proceeding on July 29, 2019.

Plaintiff also alleges that, from July 12, 2019, to July 25, 2019, Betty Harper, who works in the "canteen office," sold him "several honey buns which he later found out were molded and out dated . . . . [sic]." [doc. #s 1, p. 1; 10, p. 4]. After eating one honey bun, which tasted "tainted," Plaintiff returned five "cakes" to the canteen. [doc. # 1, p. 1]. In his first pleading, he alleges that an official at the canteen "sent more molded honey buns." *Id.* In his third pleading, he alleges that "all contaminated items were replaced and return [sic]" back to him. [doc. # 10, p. 4]. Plaintiff "made several complaints about the canteen [selling] molded honey buns . . . ." [doc. # 4, p. 3].

Plaintiff claims that, on July 25, 2019, he felt weak, he was very light-headed, he was breathing abnormally, and he coughed up blood, white foam, and bacterial substances. [doc. # 10, p. 2]. Ten minutes later, Nurse Wever approached him with "the medicine supplies for inmates." *Id.* Plaintiff informed Wever of the symptoms above, and he completed a "sick call request to see Dr. Hearn." *Id.* He also told Wever that he was sick from eating moldy honeybuns, from breathing mold and fungus in the shower area, and from enduring "poor ventilation on G-Pod where[] there is mold and fungus by the vents, on the walls, just about everywhere." *Id.* at 3. According to Plaintiff, Wever told him: "You have complain[ed] about the same thing multiple times[,] you might see Dr. Hearn tomorrow on 7-26-19 so stop worring [sic] me." *Id.* He also alleges that Wever stated, "You don't look sick enough for me to dial 911 for an ambulance so you will not see a doctor today." *Id.*

Plaintiff then asked Deputy Harrison to "get Supervisor Devin Skipper to come to G-Pod" to address his medical needs. *Id.* Harrison responded, "You know that Skip isn't coming back here to G-Pod to see what you want Mr. Richards cause we all about to go home at 6 . . .

2

and Skip isn't about to call no ambulance cause that would cause Skip too much extra paperwork. [sic]." *Id.* at 4.

Plaintiff claims that, on July 26, 2019, Dr. Hearn refused to examine him "concerning the mold incident that occurred between 7-12-19 and 7-25-19." *Id.* The same day, he was "transported to E.A. Conway in Monroe." *Id.* at 5.

Plaintiff claims that, from July 12, 2019, to July 25, 2019, "he was denied adequate medical attention and treatments by" all named defendants. *Id.*

Plaintiff claims that Assistant Warden Pam Torbor failed to inform "medical to get Plaintiff to [the] hospital to have him check[ed] for ingrowing mold fungus in his body . . . ." [doc. # 1, p. 2].

Plaintiff suffers from "shortness of breath." [doc. # 1, p. 2]. He also alleges that mold and fungus could be growing in his lungs, that the mold could cause cancer, and that it "could have an effect on his life and health in the future." *Id.* at 2. Plaintiff does not specify whether the black mold, the moldy honey buns, or both caused his symptoms and potential ailments. *Id.*

Plaintiff seeks $100,000.00 from each defendant "for mental anguish," $50,000.00 in punitive damages from each defendant, attorney's fees, and reimbursement for medical costs. [doc. # 10, p. 6]. He also asks the Court to order defendants to "clean up" the mold in the facility. [doc. # 4, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is

3

subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis*,* his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

      A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

      A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a

5

"[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Conditions of Confinement**

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of "the minimal civilized measure of life's necessities."[4] *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

"*Some* conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue

---

[4] The deprivation alleged must be, objectively, sufficiently serious. *Farmer*, 511 U.S. at 834. This standard is not static: the inquiry is whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation marks and quoted source omitted).

blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks and quoted source omitted).[5] However, "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* at 305.

Here, Plaintiff first alleges that, since he arrived at LPDC on July 2, 2019, he has been exposed to black mold, which grows on the showers and ventilation equipment. [doc. # 1, p. 1]. The mold causes him headaches and makes him cough up phlegm, white foam, and blood. *Id.* He complained about the mold several times, but "nothing [has] been done . . . ." [doc. # 1, p. 1]. He faults Warden Jim Tuten for knowing of the condition and failing to remedy it. *Id.* at 3.

However, while Plaintiff alleges that Tuten is aware of the mold, that he complained about the mold "several time[s]," and that he filed "3 different grievance[s] to" Tuten,[6] he does not allege that Tuten knew the mold posed an excessive risk to his health. [doc. #s 1, p. 3; 4, p. 3; 10, p. 4]. Plaintiff, in other words, does not allege that Tuten was deliberately indifferent. The Court should dismiss this claim.

Next, Plaintiff alleges that, from July 12, 2019, to July 25, 2019, Betty Harper sold him "several honey buns which he later found out were molded and out dated . . . . [sic]." [doc. #s 1, p. 1; 10, p. 4]. In his first pleading, he alleges that the official at the canteen "sent more molded honey buns." *Id.* In his third pleading, he alleges that "all contaminated items were replaced and

---

[5] "Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 678 (M.D. La. 2007) (citing cases).

[6] Plaintiff does not identify the substance or contents of the grievances.

7

return [sic]" back to him. [doc. # 10, p. 4]. He "made several complaints about the canteen [selling] molded honey buns . . . ." [doc. # 4, p. 3].

As with Tuten, however, while Plaintiff alleges that Harper knew that the honey buns contained mold and that he was dissatisfied with the product, he does not allege that Harper knew that the mold posed an excessive risk to his health. Moreover, absent an allegation that honey buns were the only means by which he could obtain sustenance (i.e. an allegation that he had no choice but to eat the honey buns), and an allegation that Harper knew that honey buns were Plaintiff's only source of sustenance, Harper did not cause Plaintiff's alleged health deprivation. Essentially, it seems Plaintiff exposed himself to a risk by choosing to eat moldy honey buns.

Further, the undersigned finds Plaintiff's underlying contention—that the voluntary, repeated consumption of moldy honey buns caused mold and fungus to grow in his lungs and caused him to cough blood, white foam, and phlegm—fanciful and, consequently, factually frivolous.[7] See *Williams v. Collins*, 988 F.2d 1212 (5th Cir. 1993) (noting that a "delusional, irrational, fantastic, or wholly incredible claim may be factually frivolous[,]" and affirming the determination that claims of toxic gas, food tainted with the AIDS virus, contaminated peanut butter, and a tainted sewing needle were irrational and fanciful). Accordingly, the Court should dismiss this claim.

**3. Medical Care**

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x

---

[7] A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke,* 490 U.S. at 325. Courts are afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

8

328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

**A. Nurse Wever**

Plaintiff claims that, on July 25, 2019, he felt weak, he was very light-headed, he was breathing abnormally, and he coughed up blood, white foam, and bacterial substances. [doc. # 10, p. 2]. Ten minutes later, Nurse Wever approached him with "the medicine supplies for inmates." *Id.* Plaintiff informed Wever of the symptoms above, and he completed a "sick call request to see Dr. Hearn." *Id.* He also told Wever that he was sick from eating moldy honeybuns since July 2, 2019, from breathing mold and fungus in the shower area, and from enduring "poor ventilation on G-Pod where[] there is mold and fungus by the vents, on the walls, just about everywhere." *Id.* at 3. According to Plaintiff, Wever told him: "You have complain[ed] about the same thing multiple times[,] you might see Dr. Hearn tomorrow on 7-26-19 so stop worring [sic] me." *Id.* He also alleges that Wever stated, "You don't look sick enough for me to dial 911 for an ambulance so you will not see a doctor today." *Id.*

Plaintiff does not, however, allege that Wever refused care. Moreover, Wever did not ignore him, intentionally treat him incorrectly, or engage in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

Even assuming Wever only examined/evaluated Plaintiff or only listened to his concerns (without supplying further care), Plaintiff fails to state a plausible claim because he merely quarrels with Wever's professional opinion that he did not require emergency care and that he was medically capable of waiting to see a physician. See *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no . . . claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment."). The Court should dismiss this claim.

10

**B. Deputy Harrison and Supervisor Skipper**

Plaintiff asked Deputy Harrison to notify Supervisor Skipper that he required care for his "'medical situation.'" Harrison responded, "You know that Skip isn't coming back here to G-Pod to see what you want Mr. Richards cause we all about to go home at 6 . . . and Skip isn't about to call no ambulance cause that would cause Skip too much extra paperwork. [sic]."

First, Plaintiff does not name Harrison as a defendant in his schedule of defendants. [See doc. # 10, p. 5]. Nor does he indicate that he seeks relief from Harrison. Even if he does, he does not allege that he informed Harrison of the extent of his medical needs. Consequently, he does not allege that Harrison knew that he was exposed to a substantial risk of serious harm.

It appears, rather, that Plaintiff faults Supervisor Skipper. See *id.* However, he does not allege that Harrison relayed his request for care to Skipper. Nor does he otherwise allege that Skipper knew of his medical needs or symptoms. As with Harrison, Plaintiff does not allege that Skipper knew he was exposed to a substantial risk of serious harm. The Court should dismiss these claims.

**C. Dr. Hearn**

Plaintiff claims that, on July 26, 2019, Dr. Hearn refused to examine him "concerning the mold incident that occurred between 7-12-19 and 7-25-19." Plaintiff presumably refers to the moldy honey buns because the dates coincide.[8]

Plaintiff, however, does not identify what, if anything, he told Dr. Hearn. Consequently, he does not allege that Hearn knew he was exposed to a substantial risk of serious harm.

---

[8] By contrast, Plaintiff claims that he has been exposed to black mold in the facility since July 2, 2019, and that he remains exposed.

11

In addition, he suggests that he received care at a hospital the same day Hearn allegedly refused to examine him. [doc. # 10, p. 5]. In this respect, he does not allege that he suffered substantial harm as a result of, or during, the brief delay in care. See *Galvan v. Calhoun Cty.*, 719 F. App'x 372, 374 (5th Cir. 2018) (recognizing that, to establish liability based on a delay in treatment, a plaintiff must show deliberate indifference to serious medical needs that resulted in substantial harm). Accordingly, the Court should dismiss this claim.

**D. Assistant Warden Pam Torbor**

Plaintiff claims, without elaborating, that Torbor "is liable for not during [sic] her job appropriately of not informing medical to get plaintiff to hospital to have him check for ingrowing mold fungus in his body internal. [sic]." [doc. # 1, p. 3]. The undersigned previously instructed Plaintiff to amend and address multiple areas of concern. [doc. # 8, p. 4]. Plaintiff, however, failed to elaborate in his amended pleading and, instead, named eleven new defendants and raised a host of new (albeit, related) allegations.

Ultimately, this claim is conclusory. Plaintiff does not allege that he requested care from Torbor, when he requested care from Torbor, what ailed him, what he told Torbor, or what Torbor knew. He does not clarify whether, and from whom, he eventually received care or whether Torbor relayed any request for care to providers at LPDC. Plaintiff, further, does not plausibly suggest that he had a serious medical need; rather, he suggests that Torbor failed to "have him check[ed]" for a serious medical need. So too, Plaintiff's laconic allegation does not plausibly indicate that Torbor was deliberately indifferent to a substantial risk of serious harm. The Court should dismiss this claim.

**E. Remaining Defendants**

Plaintiff claims that, from July 12, 2019, to July 25, 2019, "he was denied adequate medical attention and treatments by" all named defendants. *Id.* Aside from the claims above, however, he fails to allege that he requested care from a particular defendant, when he requested care from a particular defendant, what care he requested, or what he told a particular defendant. See *Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019) ("We of course examine each defendant's actions individually."). In other words, he fails to allege that that any particular individual knew of a substantial risk of serious harm to his health and disregarded that risk.[9] The Court should dismiss these ostensible claims.

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Kenneth R. Richards, Jr.'s claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for an evidentiary hearing, [doc. # 10, p. 7], be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or

---

[9] Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

13

response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 5th day of November, 2019.

_____
Karen L. Hayes
United States Magistrate Judge